## Sneathen's Estate (No. 1).

*Partition—Sale—Divestiture of liens.*

Where a trustee for sale in partition assures an intending bidder that any liens that might be filed for street improvements already made will be divested by the sale, and the bidder purchases the land on such assurance, he takes it free from the liens for street improvements, and such liens will be paid out of the proceeds.

Argued Dec. 4, 1902. Appeal, No. 79, April T., 1903, by John C. Sneathen et al., from decree of O. C. Allegheny Co., April T., 1901, No. 123, dismissing exceptions to adjudication in estate of John B. Sneathen, deceased. Before BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Exceptions to adjudication.

HAWKINS, P. J., filed the following adjudication :
The questions involved in this matter is whether the pur-

chaser at the trustee sale took subject to, or divested of, municipal liens.   The facts are as follows:

Partition was so proceeded with that an order of sale was made on October 6, 1900.

Ordinances were passed March 21, 1898, providing for the construction of sewers, and March 27, 1898, for grading and paving certain streets, and the work provided for there seems to have been completed through this decedent's property prior to the day of the sale; but the assessments were not made until afterward.

Mr. Willock, the purchaser, claimed on the first day of the audit, April, 1901, that he had bought divested of liens, and distribution of $7,000 was accordingly, July 6, 1901, suspended until the liens could be adjusted, no objection being made thereto.   No exceptions were filed to this appropriation, but in August following a petition was presented on behalf of John C. Sneathen, trustee, who was also one of the parties to the partition, denying that there had been any understanding that Mr. Willock should buy divested of liens, and asking for a rehearing, which was granted.   The evidence adduced upon the rehearing showed that while there was no public announcement the sale would be made divested of liens, the trustee assured Mr. Willock they would be paid out of the proceeds, it was upon this assurance Mr. Willock bought.

Two questions were raised:

(1) Whether the liens were divested by operation of law; and if not, (2) What effect the trustee's assurance had? The question of trust and fraud raised by the exceptions of Jewel H. Sneathen having been adjudicated by the court of common pleas No. 1 at No. 253, September term, 1899, against her, the exceptions are dismissed.

### OPINION.

If a stranger seeking a site had casually arived at the time and place of this sale and refused to bid because he had not an opportunity to examine for the former municipal liens, this would have been an obvious disadvantage to the estate.   It is the policy of the law to encourage bidders, because this is the only method by which the true value of the land can be developed.   If he had yielded to the implication of a completed

improvement and the personal assurance of the trustee for sale that the land would be sold freed from liens his bid would naturally have been increased by the fact of improvements, and he ought not to be compelled to pay for these improvements twice over. Mr. Willock bought in good faith upon the strength of completed and visible improvements, and the trustee's assurance that the lien would be divested.

While the time had not arrived for the filing of liens, the city had an inchoate right to liens from the passage of the ordinances. The amount had not yet been ascertained, but it was certain to follow in due course. The so-called " lien " for whose entry of record the act of 1891 provides is no more than the formal liquidation of the cost of municipal improvements initiated by the ordinances. " A mechanic who has expended his labor on a house, has his right to a lien for the value of his labor ; the value, if there be no contract price, cannot be determined until the lien be filed, and then perhaps not definitely until the judgment on scire facias ; but if the lien be not filed until the last day of the six months, that fact does not affect the right, during the interval, to impose the burden ; the encumbrance is there, indefinite as to amount, because of the indefiniteness of opinion as to the value of this labor, but there is absolute certainty of opinion as to the labor having some value, for there stands the house, the product of the mechanic's labor : " Lafferty v. Milligan, 165 Pa. 534. Here the improvement of the street on which this property fronted had been completed ; and it was obvious that unless paid the city had a lien. If Mr. Willock had refused to bid until he had examined the record, the estate would have lost a bidder, and in value. But he assumed, and had a right to assume, that the property would be sold free from the apparent lien. The visible evidences of completed improvements and the consequent right of the city of lien when the judicial sale took place gave him ample assurance ; and there is no reason to doubt that his bid represented the full value of the property enhanced by the improvement.

It is immaterial to the city when judicial sale, other than that on its own lien, takes place ; for by the terms of the act of 1891, the costs of municipal improvements is made a lien until paid, and had therefore in effect priority given it over

all other liens, whether entered before or after confirmation of
the assessment: Pittsburg's App., 70 Pa. 142. The passage
of the ordinance is the foundation of an entire proceeding.
The charge which it imposes on the land for contemplated im-
provements is just as binding as a judgment in partition in a
court of law, and what follows is simply executionary. It
provides for grading and paving, etc., and the confirmation of
the viewers' report is no more than a judicial ascertainment of
the costs when done. The only condition of divestiture im-
posed by the act is payment of this cost; and nothing is said
as to the time when, nor tribunal by which, this divestiture
shall be worked.

If it be objected that when sale is made before confirmation
of the report there can be no certainty as to the cost of the
improvement, the answer is, that is certain which may be ren-
dered certain. Thus where there was an award that the costs
of specified actions should be paid by the plaintiff and defend-
ant in due proportions, the award was held to be sufficiently
certain, since it would become so upon taxation by the proper
officer: Broom's Maxims, 626. So the lien of collateral inherit-
ance tax, although not assessed, is discharged by judicial
sale: Mellon's Appeal, 114 Pa. 564. The commonwealth, said
Mr. Justice STERRETT, was undoubtedly entitled to be first
paid out of the funds, and if the tax and accrued interest had
been claimed, it would have been paid and the lien satisfied.
The fact that the amount of the lien had not been ascertained
and fixed cannot affect the result. · It was capable of ascertain-
ment, and might have been definitely fixed even after the money
applicable to its payment was raised by judicial sale. If the
claim had been made, the court would have doubtless retained
its grasp on sufficient amount of the fund to pay the tax lien.
But no claim upon the fund was ever made for the reason,
doubtless, that neither the register nor the court distributing
the fund was aware of the existence of the claim. That fact,
however, did not prevent the discharge of the lien by judicial
sale, producing funds applicable primarily to the lien and more
than sufficient to pay it. So here the city had an existing in-
cumbrance (Lafferty v. Milligan, supra), whose amount was
readily capable of ascertainment, and has in fact since been as-
certained, and enough has been retained out of the proceeds of

45, (1903).]                    Adjudication.

the sale to satisfy it in full.   There is, therefore, no apparent reason why any difference should exist between this and other unliquidated liens as respects divestiture, the proceeds of sale being sufficient to satisfy.   There is certainly nothing in the act of 1891 which differentiates them in this respect: Tassey's Est., 41 Pa. 60.   The passage of the ordinance was notice to the world of an incumbrance, which continued until the sale took place, and enough has been realized to pay it.   The purpose and intent of the law is, therefore, satisfied.

Outside of the construction of the statute, there are equities which go to strengthen the theory of divestiture.   Mr. Willock's understanding of the matter was brought to the court's attention at the time of the audit, when all parties interested were supposed to be present, and as no objection was made to the truth of his statement, the fact of divestiture of lien was assumed, and appropriation made accordingly.   If his claim had been denied, he would have had a strong equity to relief, but no question was raised, notwithstanding ample time and opportunity were given, until this money was in the pockets of those whose duty it was to object.   The trustee says he was ignorant that Mr. Willock had testified at the audit, but he knew that he had been claiming divestiture, and it was his duty to be on the qui vive.

The lapse of three months between the date of Mr. Willock's testimony and the decree of distribution afforded ample opportunity for investigation.   There is no denial that the trustee knew of the decree of distribution, and yet no notice was taken of it until after expiration of twenty days allowed for filing exceptions.   The delay, to say the least, was suspicious.   Certainly John C. Sneathen is estopped for he gave Mr. Willock assurance that the lien would be divested by the sale, and the fact that the other heirs failed to join in the petition implies that they were satisfied with the decree.   In view, then, of the circumstances in which Mr. Willock was allowed to buy, the laches of the trustee in raising objections to Mr. Willock's claim of divestiture, and the presumed acquiescence of the other parties in divestiture, it is very clear that it would be a great hardship to compel him to assume the burden of municipal liens, and that petitioner has no equity to relief.

*Error assigned* was decree dismissing exceptions to adjudication.

*James T. Buchanan*, for appellants.—A trustee appointed to make sale of land in partition proceedings has no authority to make the sale other than what he derives from the order of the court appointing him and directing the sale. He cannot, either privately, or by public announcement, alter or vary the terms or conditions of the sale: Thompson v. Rogers, 67 Pa. 39; Myers v. Hodges, 2 Watts, 381; Eshelman v. Witmer, 2 Watts, 263; Miles v. Diven, 6 Watts, 148; Sage v. Nock, 4 Clark, 518; Vandever v. Baker, 13 Pa. 121; Sackett v. Twining, 18 Pa. 199; Randolph's Appeal, 5 Pa. 242; Davis's Appeal, 14 Pa. 371; Jacobs's App., 23 Pa. 477.

*T. D. Chantler*, *W. M. McGill* and *W. H. McClung*, for appellee.—Agreements like the one in this case have always been sustained by the law of this state: Zeigler's App., 35 Pa. 173; Schall's App., 40 Pa. 170; Ashmead v. McCarthur, 67 Pa. 326; Shultze v. Diehl, 2 P. & W. 273.

But entirely aside from the agreement that the municipal claims should be paid out of the proceeds of the sale, such would have been the case as a matter of law: Lafferty v. Milligan, 165 Pa. 534; De Arment v. Kennedy, 14 Pa. Superior Ct. 539; Keen v. Swaine, 3 Yeates, 564; Stewartson v. Watts, 8 Watts, 392; Presbyterian Corporation v. Wallace, 3 Rawle, 109; Luce v. Snively, 4 Watts, 396; Pierce v. Gardner, 83 Pa. 211; Brownback v. Ozias, 117 Pa. 87.

PER CURIAM, January 20, 1903:

In the distribution of the decedent's estate, $7,000 were set aside for the payment of municipal claims alleged by the purchasers of the real estate of the decedent to have been divested by the sale. Upon distribution, $5,484.45 was distributed to the claims aforesaid. The heirs and legal representatives of the estate joined in an appeal to the Supreme Court, the judge of the orphans' court certifying that the amount involved was over $1,500. That court, however, decided that, inasmuch as the individual claim of each decedent was under $1,500, the appeal should have been taken to the Superior Court. A joint appeal

was, therefore, taken, which is now before us for consideration.

At the argument it was intimated that the joint appeal could not be prosecuted before this court and that separate appeals should have been taken for each individual claimant. Under the peculiar circumstances of this case, we gave permission to the appellant's counsel to amend, however, and, upon his motion, "the appeal taken in the above case is (was) amended, by striking therefrom the names of all the appellants, except Frank F. Sneathen, so that said appeal shall stand as the appeal of the said Frank F. Sneathen, and judgment of non pros. is (was) entered as to all of the other appellants." As to the question of joint appeals, see Samson's Estate, post, p. 93, in which an opinion has been this day filed. We, therefore, consider this appeal as that of Frank F. Sneathen, who was entitled to the one ninth of the sum concerning which error in the distribution is alleged.

The fund arises from a public sale of real estate by a trustee, under proceedings in partition. The auditing judge has found as a fact that "the evidence adduced upon the rehearing showed that, while there was no public announcement, the sale would be made divested of all liens, the trustee assured Mr. Willock (the purchaser) they would be paid out of the proceeds. It was upon this assurance Mr. Willock bought."

With this fact found upon evidence which in our opinion justified the finding, it is difficult to see what legal conclusion other than the one arrived at by the court could have been legitimately reached. The opinion of the auditing judge fully discusses the questions involved and justifies his conclusion.

It is unnecessary for us to discuss the questions involved further than to say that we are satisfied with the findings of fact and with the legal conclusions, as stated in the opinion based thereon. The decree is, therefore, affirmed and the appeal dismissed at the cost of the appellant.